Danny SANDERS *v.* STATE of Arkansas

CR 82-2                                    635 S.W.2d 222

Supreme Court of Arkansas
Opinion delivered June 21, 1982

*Allen & Heuer,* by: *Tom Allen,* for appellant.

*Steve Clark,* Atty. Gen., by: *Theodore Holder,* Asst. Atty. Gen., for appellee.

RICHARD B. ADKISSON, Chief Justice. Following a trial by jury appellant, Danny Sanders, was sentenced as a habitual offender to 20 years on each of two counts of aggravated robbery and to 60 years for rape. On appeal, we affirm.

On July 5, 1981, a husband and wife were camped at the Oil Trough Ferry near Batesville. About 2:00 a.m. they were awakened by a man in their tent who told them that he had a .38 pistol and that he wanted their money. The husband immediately turned on a spotlight, at which time they realized there were four men in the tent, two armed with guns and two with knives. Later a fifth accomplice came into the tent. The robbers took the $11.00 that the couple had; the husband was then forced to accompany three of the men to the tent-trailer of people camped nearby. Meanwhile, appellant and another man stayed in the tent and raped the wife.

Several weeks later a deputy sheriff showed the victims photographs of four suspects. The wife picked out appellant as being one of her assailants. The husband picked appellant as a look alike but was unable to make a positive identification. At trial appellant was positively identified by each victim.

Appellant first argues that the victims' in-court identification of appellant should have been excluded because it was unreliable. Appellant alleges that the following factors point to unreliability: The wife, in a handwritten statement to the police, stated that her assailants referred to each other as Ricky and Bobby; appellant's name is Danny. The wife at one time testified that appellant's face was clean shaven; yet there was some evidence that appellant had a mustache and

goatee at the time of the rape. The wife stated she did not remember any distinguishing characteristics about appellant; yet he had numerous tattoos on his arms and was small (5'1" and 115 pounds). The husband positively identified appellant at trial; yet before trial was unable to make a positive identification from a photograph.

It is not argued that the procedures leading to the identification were constitutionally infirm; therefore, the reliability of eyewitness identification is a question for the jury. *Synoground* v. *State,* 260 Ark. 756, 543 S.W.2d 935 (1976). Although the wife could recall very few of appellant's physical characteristics in describing him to the police, her identification of appellant both in court and by picture was always positive and unwavering. There was testimony that the spotlight in the tent was on during the rape, and the wife testified that she looked directly at appellant. The credibility of the witnesses and the weight to be given to their testimony was a question for the jury.

Appellant argues that the trial court erred in allowing the State to introduce a photograph depicting appellant as clean shaven on the date of his arrest. The appellant called several witnesses, most of them family members, who testified that the appellant had facial hair on the date of the offenses, but had shaved it after he was arrested. The photograph was relevant to the testimony of those witnesses who stated that the appellant shaved his face only after he was incarcerated because the photograph shows him clean shaven on the date of his arrest. A juror could draw an inference of either dishonesty or faulty perception based on this evidence.

Appellant argues that the trial court erred in refusing to order that appellant be allowed to take the depositions of two out-of-state persons who were called as witnesses at the trial by the prosecution. Appellant alleged that the witnesses refused to speak with defense counsel; therefore, he could not adequately prepare for trial. However, appellant has failed to show how he was prejudiced by his not being allowed to take their depositions before trial. *Hill* v. *State,* 275 Ark. 71, 628 S.W.2d 284 (1982). Both witnesses testified at

trial and defense counsel had an opportunity to cross-examine them. There is nothing to indicate that appellant was not furnished with the witnesses' statements after direct examination as required by Ark. Stat. Ann. § 43-2011.3 (Repl. 1977). Appellant cites A. R. Cr. P. Rule 17.4 (Repl. 1977) and Ark. Stat. Ann. § 43-2011 and § 43-2011.1 (Supp. 1981), to support his argument but neither the statutes nor the rule provides for the taking of a deposition under the circumstances present in this case. In light of the above considerations, we cannot say that the trial court abused its discretion in refusing to order the depositions.

Appellant argues that the trial court erred in limiting his attorney's fee to the statutory amount of $350.00 as set out in Ark. Stat. Ann. § 43-2419 (Repl. 1977). We disagree. The attorney submitted a bill of $4,625.00 to the county for services rendered pursuant to his appointment in this case. The trial court ruled that the charges were reasonable but correctly refused to order payment in full, citing precedent of this court and the statutory limit of $350. *State* v. *Ruiz & Van Denton,* 269 Ark. 331, 602 S.W.2d 625 (1980).

Appellant now argues on appeal that Ark. Stat. Ann. § 43-2419 (Repl. 1977) violates various other provisions of the state and federal constitutions. However, these objections to the statute were not raised in the trial court and this court will not consider arguments raised for the first time on appeal. *Wicks* v. *State,* 270 Ark. 781, 606 S.W.2d 366 (1980).

Affirmed.

HICKMAN, J., concurs.

DARRELL HICKMAN, Justice, concurring. I concur with the result but would add that the appellant's attorney has not demonstrated that he has been singled out to represent this indigent defendant, or others, to his obvious legal detriment.

It is part of the duty and responsibility of any practicing attorney to do his part to represent individuals in the locality in both civil and criminal matters who cannot afford

counsel. All lawyers must bear some burden in administering the justice system. *See* ABA CANON 2, Ethical Consideration 2-25. [Code of Professional Responsibility and Canons of Judicial Ethics.]

It may be possible in a given criminal case that an indigent's attorney might make a showing that he has been deprived of property without due process of law. That is a theoretical possibility. *See State* v. *Ruiz,* 269 Ark. 331, 602 S.W.2d 625 (1980). But a bare showing that numerous hours have been invested cannot in my mind even raise that issue, and that is essentially all the appellant's attorney has done.